### Edwin R. Harding et al. v. Florence Tory, Administratrix.

#### Gen. No. 4,791.

1. VERDICT—*when not disturbed as against the evidence.* A verdict which is not manifestly against the weight of the evidence will not be disturbed on review.

2. NEGLIGENCE—*when instruction does not warrant recovery without proof of.* Held, that a particular instruction referred to in substance in the opinion did not tell the jury that they were authorized to render a verdict against the defendant without proof of the negligence charged.

Action in case for death caused by alleged wrongful act. Error to the Circuit Court of Peoria county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

PINCKNEY & McROBERTS and THOMAS M. KEARNEY, for plaintiffs in error.

WOLFENBARGER & MAY and STEVENS & HORTON, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

Harding and Nelson, plaintiffs in error here, were

constructing a sewer for the city of Peoria in one of its streets. At the point here in question the excavation was about fourteen feet deep. John Tory was pipelayer in the bottom of that sewer. While a gang of men in the employ of Harding and Nelson were engaged in removing a hoisting derrick on the surface of the ground above the excavation they or one of them carelessly and negligently allowed a stone to fall into the excavation. It struck John Tory upon the top or back of his head and either fractured the base of his skull or produced concussion of the brain. He died therefrom a few hours later, leaving a widow and children. His administratrix brought this suit against Harding and Nelson to recover damages for injury to the means of support of said widow and children. An appropriate declaration was filed and a plea of not guilty and upon a jury trial plaintiff had a verdict and a judgment for $5,000. Defendants have sued out this writ of error to review this judgment.

It is contended by plaintiffs in error that deceased ought not to have been at the place where he was hurt, and that his going to that spot was negligence contributing to the injury and barring a recovery. The ditch was being dug northward. The first five or six feet of the excavation was thrown out by shovels upon a place fitted to receive the soil and gravel, and this earth was removed by others. Then a hoisting derrick was placed at one side of the ditch and from an arm of the derrick which extended over the ditch a bucket was lowered into the ditch and filled by workmen there, and then it was hoisted out and the contents of the bucket deposited on a platform on the derrick, and thence removed by others. To keep the hoisting derrick from falling over upon the excavation there was a place in the end of the derrick furthest from the ditch and under said platform in which stones were placed. The weight of these stones held the derrick firmly in position while in operation. By means of the derrick the ditch was carried down to

a point from six to twelve inches above the bottom of the sewer as it was to be laid. When that point had been reached the men engaged in excavating and operating the hoisting derrick removed the stones in the back of the derrick to a point further back from the ditch and then moved the derrick north along the line of the ditch and reloaded it with stones and resumed the excavation. Tory had worked in this ditch with the hoisting derrick before he became pipelayer, but while acting as pipelayer he had no connection with the hoisting derrick or with the men who operated it, and it is clear that they were not his fellow-servants. South of the hoisting derrick was the pipelayers' derrick, which consisted of a tripod having one leg on one side of the ditch and two legs on the other. The pipelayer, Tory, worked in the bottom of the ditch. The sewer pipe was twenty inches in diameter and two feet long. Tory would prepare the place for the pipe by removing the last six to twelve inches of the gravel. He threw this dirt back over the sewer pipe already laid to the south of him, and therefore necessarily worked with his back to the hoisting derrick. When he had fitted a place for a length of pipe, other men on top of the ground, including his foreman, lowered a length of pipe to him by the tripod derrick, and he put it in place, determined that it was at the right angle by sighting along the line of the ditch, and raised or lowered the ground as might be necessary to get the pipe at the right angle. He then cemented the pipe in place, and then prepared for the next length, which necessitated his backing further north towards the hoisting derrick in order that he might throw the dirt to the south over the pipes already laid. The sides of this excavation were braced to prevent caving in, and each section of braces was about eight feet long. The legs of the tripod on the side where there were two spread some distance apart. The hoisting derrick extended ten feet along the ditch. Hence the center of the hoisting derrick and the center of the

tripod were some distance apart, probably from sixteen to twenty feet, as a rule. The proofs show that no loitering was allowed among the workmen on this ditch, but each one was required to keep actively at work. Just before Tory was injured the hoisting derrick had come to the end of the work to be done with it at that point, and the men in charge were about to remove it away from the street. It is the claim of the plaintiffs in error that Tory was working sixteen feet distant from that derrick, and that his duties did not require him to come any closer; that he negligently left his post of duty and worked along under the hoisting derrick, and that if he had remained at his post of duty he would not have been struck by the falling stone. There is some evidence from which this theory can be inferred, but there is other evidence to the contrary. The foreman over Tory did say to him that they could not lay any more pipe till the hoisting derrick was removed, but his further testimony showed that he did not tell Tory to stop working and that they did continue at work laying pipe, notwithstanding he had made that statement. This foreman was about fifty feet away from the ditch at the time of the accident, and he had a workman with him. At the trial he testified that he had forgotten why he went away, but he admitted that before the coroner's jury, a day or two after the accident, when the matter was fresh in his memory, he testified that he had gone there to get another length of pipe to lower into the ditch. The jury were therefore warranted in finding that, notwithstanding the hoisting derrick was to be moved, the work of lowering the sewer pipe went on under the direction of the foreman. Tory was at the bottom of the ditch fourteen feet deep, doing work which required that his back be toward the hoisting derrick much of the time. The side of the hoisting derrick next to the ditch stood one or two feet back from the line of the ditch. It does not appear that Tory could see what was being done with the hoisting derrick.

The box which held the stone used for ballast was
next the ground and several feet further back from
the ditch. It does not appear that any stone from
that box had ever before been allowed to fall into
the ditch, or that Tory had any reason to expect it
would be so carelessly handled as to permit it to fall,
or that there was any reason why a stone should be
near enough to the ditch to fall into it. While Tory
usually prepared the ground at the bottom for only
one length of pipe at a time, yet there is nothing to
show that his duties restricted him to preparing that
space of two feet or that there was any reason for
him to suppose that it was dangerous to approach
nearer than that to the hoisting derrick. He was re-
quired to keep busily at work, and if there was a delay
in lowering a piece of pipe there was no reason why
he should not move still further north and prepare the
bottom for another piece of pipe. In sighting along
the ditch to determine whether a particular piece of
pipe was at the proper angle, he might find it neces-
sary to step several feet back towards the hoisting der-
rick. A witness who had previously been pipelayer
testified that when he was working in that ditch laying
pipe he worked within eight feet of the men who were
doing the excavating, and that he worked no closer
to them because only one man at a time could work
in the same section of the bracing. There was testi-
mony that the center of the tripod was only thirteen
feet from the center of the hoisting derrick at the time
of the accident. If that was the exact distance, then
as the hoisting derrick stood ten feet from north to
south the south edge of the hoisting derrick would
only be eight feet from the center of the tripod. One
of the men engaged in moving the stones, and through
whose negligence the stone fell, stood south of the
hoisting derrick, and must have occupied two or three
feet of space. Tory might easily have been at work
two or four feet or more north of the center of the
tripod. There was no rule or duty that restricted him

Harding v. Tory.

to any particular place. No one saw him struck. While some witnesses said he was found almost directly under the hoisting derrick, others testified that he was a little ways south of the hoisting derrick, without saying exactly how far. In such state of the proofs it was for the jury to decide whether Tory was guilty of negligence in being at the precise place where he was struck, and the jury were warranted in finding that he was not guilty of negligence. In our judgment the verdict of the jury was right.

It is urged that the court erred in giving the fifth and sixth instructions requested by plaintiff. One of the six counts of the declaration charged the incompetence of the employes of plaintiffs in error who operated the hoisting derrick, and plaintiffs in error had introduced evidence to show that they were competent and experienced men. The purport of the fifth instruction was that even if these were competent and experienced men that would not prevent a recovery by plaintiff if Tory was exercising due care for his own safety and was injured by the negligence of said employes as charged in the declaration or some count thereof, and if Tory and said other servants were not fellow-servants. Plaintiffs in error argue that from this instruction the jury would understand that plaintiff could recover without proof of negligence on the part of plaintiffs in error. It is impossible that the jury could so understand if they regarded the language of the instruction. The instruction was proper in view of that allegation in the declaration and the proofs thereunder. The sixth instruction also is criticized, but we are of opinion that it correctly stated the law.

We are of opinion that this record is free from the errors asserted. The judgment is therefore affirmed.

*Affirmed.*